UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANTERO OLIVEIRA,

                                        Plaintiff,            Case No.: 23 Civ. 7427

              -against-

                                                             **COMPLAINT**

SUSAN CACACE, in her capacity as statutory licensing
officer and Individually,

                                        Defendant.
------------------------------------------------------------------x

        Plaintiff, ANTERO OLIVEIRA, by his attorneys The Bellantoni Law Firm, PLLC, as

and for his Complaint respectfully states:

        1.      In its June 23, 2022 Opinion in *NYSRPA v. Bruen*[1], the Supreme Court explicitly

rebuked discretionary firearm licensing regimes with subjective criteria "like New York's" that

"require the appraisal of facts, the exercise of judgment, and the formation of an opinion…"

*Bruen*, 2138 n. 9.

        2.      The *Bruen* Court cautioned 6 outlier states, including New York, that the survival

of their may-issue licensing schemes is contingent upon the transition to a shall-issue scheme with

objective criteria. *Id.*

        3.      One year later, New York's Legislature and licensing officers continue to disregard

Supreme Court precedent – perpetuating a decades-old and grossly unconstitutional "shall-not-

issue-except" licensing scheme that imbues "broad discretion" in its licensing officers and imposes

subjective criteria upon a preexisting protected right.

---

[1] 142 S.Ct. 2111 (2022).

4.      Plaintiff has no disqualifiers to the lawful possession of firearms under state or federal law.

5.      But under New York's licensing scheme, Defendant exercised her "broad discretion", and the "appraisal of facts, the exercise of judgment, and the formation of an opinion" to deprive Plaintiff of the Right to purchase, possess, and carry handguns for self-defense.

6.      New York's failure to heed the Supreme Court's warning in *Bruen* calls out for this Court to strike the State's unconstitutional "shall-not-issue-except" licensing scheme in its entirety.

7.      Over half of this Nation's states are "constitutional carry" (permitless) jurisdictions[2] that adhere to the plain text of the Second Amendment.

8.      And while the *Bruen* Court sanctioned existing shall-issue regimes, the imposition of *any* licensing requirement as a prerequisite to the exercise of presumptively protected – and **preexisting**[3] - right violates the plain text of the Second Amendment.

9.      Rarely acknowledged, the 'plain text' mandates the Right **"shall not be infringed."**

## NATURE OF THE ACTION

10.      This is an action for declaratory, injunctive, and other relief, to include presumed nominal damages, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for continuing irreparable harm to Plaintiff arising from violations of his constitutional rights as codified in, and protected by, the Second Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment. 42 U.S.C. § 1983.

---

[2] https://worldpopulationreview.com/state-rankings/constitutional-carry-states
[3] "…it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right…this is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed." *D.C. v. Heller*, 554 U.S. 570, 592 (2008) quoting, *United States v. Cruikshank*, 92 U.S. 542, 553 (1876) (emphasis supplied) (cleaned up).

## JURISDICTION AND VENUE

11.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution. This action also seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

12.     Antero Oliveira (hereinafter "Plaintiff") is a natural person and a resident of Westchester County, State of New York.

13.     Susan Cacace ("Judge Cacace") is sued herein in her official capacity as a statutory licensing officer for Westchester County, New York pursuant to Penal Law §§ 265.00(10), 400.00, et seq. and Individually to the extent that Plaintiff is entitled to presumed nominal damages for the constitutional damages described herein.

14.     At all times relevant to this action, Defendant was acting in her capacity as a statutory firearm licensing officer pursuant to Penal Law § 265.00(10).

15.     As a statutory licensing officer, Defendant was authorized to issue, deny, suspend, and/or revoke licenses issued pursuant to Penal Law § 400.00, *et seq.*

## CONSTITUTIONAL FRAMEWORK

16.     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

17.    The Second Amendment codifies a "preexisting right."

"[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.

The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."

As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."[4]

18.    The 'inherent right of self-defense' is central to the Second Amendment right.[5]

"Self-defense had little to do with the right's codification; it was the *central component* of the right itself." *Heller*, at 599 (emphasis supplied).

19.    The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, at 580.

" '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

20.    The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

---

[4] *Heller*, at 592 (emphasis supplied) quoting, *Cruikshank*, supra.
[5] *Heller*, at 628.

21.     The Second Amendment *presumptively* protects the right to possess and carry all weapons in common use for self-defense. *Bruen*, at 2132 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

22.     Handguns are weapons in common use for self-defense and are protected within the scope of the Second Amendment.  *Heller,* at 628 (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

23.     In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[6], and *Caetano*.[7]

24.     Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment:

25.     "We reiterate that the standard for applying the Second Amendment is as follows:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.

The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

---

[6] *McDonald v. Chicago*, 561 U.S. 742 (2010).
[7] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at 2127. See also, *Caetano*, supra.

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

26.     "But to the extent that later history contradicts what the text says, the text controls." *Bruen*, at 2137.


### *The Supreme Court Has Rejected 'Discretion' <u>Three Separate Times</u>*

27.     Relying on text, history, and tradition, the Supreme Court decisions in *Heller* and *McDonald* <u>explicitly rejected the use of  discretion</u> in the context of Second Amendment rights.

28.     "The very enumeration of the [Second Amendment] right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope  they were  understood  to have  when  the  people  adopted  them, whether  or  not  future legislatures or (yes) even future judges think that scope too broad." *Heller*, at 634-35 (emphasis supplied).

29.     The *McDonald* Court rejected the notion that incorporating the 14th Amendment "will require judges to assess the costs and benefits of firearms restrictions" and "make difficult empirical judgments in an area in which they lack expertise", a view expressed in Justice Breyer's dissent. *McDonald*, at 790-91. "As we have noted, while [Justice Breyer's dissenting] opinion in *Heller* recommended an interest-balancing test, the Court specifically rejected that suggestion." *McDonald*, at 790-91.

30.     Adhering to Supreme Court precedent rejecting judicial discretion, the *Bruen* Court rebuked the use of discretionary and subjective factors in firearms regulation, and affirmatively

rejected licensing regimes "like New York's" that "require[e] the appraisal of facts, the exercise of judgment, and the formation of an opinion…" *Bruen*, 2138 n. 9.

31.     *Bruen* found New York's discretionary licensing scheme "unusual" and "constitutionally problematic", in part, because it grants open-ended discretion to licensing officials. *Bruen*, at 2161.

32.     And *Bruen*'s nod to shall-issue regimes, which have no historical analogue and themselves conflict with the plain text, was not an imprimatur of 'objective' criteria – it was a placeholder. Under the *Bruen* test, and Supreme Court precedent, any post-ratification restriction that conflicts with the plain text must be rejected as unconstitutional. *Bruen*, at  2137.

### NEW YORK STATE LICENSING SCHEME

33.     Requiring an individual to seek and obtain a license from the government to exercise the pre-existing right to purchase, possess, and/or carry a weapon in common use for self-defense does not survive the text, history, and tradition test announced in *Bruen* and is ***patently inconsistent*** with the plain text of the Second Amendment, which forbids any infringement of the right to possess and carry weapons.

34.     After *Bruen*, New York State neither fell in line with its sister "constitutional carry" states nor did it heed the Supreme Court's warning; licensing officers remain empowered with 'broad discretion' to deny licenses to people who, like Plaintiff, are not prohibited under state or federal law from possessing firearms.[8]

35.     Over a year later, New York has taken no steps to bring its firearm regulations into constitutional compliance. In toddler-like fashion, the State dug in its heels, defiant to the Constitution and the United States Supreme Court.[9]

---

[8] The term "firearms" as used herein refers generally to handguns, rifles, shotguns, and "other firearms."
[9] https://www.youtube.com/watch?v=gC1L2rrztQs

36.     New York continues to impose a shall-not-issue-unless[10] licensing scheme that requires subjective opinion forming in the denial, issuance, renewal, suspension, and revocation of a license.

37.     But even securing a license in New York does not solidify one's Second Amendment Rights.  Licensees are constantly under the unyielding judgmental discretion of a public servant.

38.     Under the scheme, "a license may be revoked and cancelled at any time" by a licensing officer – even for events and conditions that do not disqualify the licensee from lawfully possessing firearms under state or federal law.[11] A firearms license can be suspended or revoked if "*at any time*" a licensee becomes "ineligible to obtain a license, including engaging in conduct that would have resulted in the denial of a license…"[12]

39.     Meaning that ***anything*** that the licensing officer feels shows that a licensee has 'lost' essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others"[13] constitutes grounds for suspension and/or revocation.[14]

---

[10] "**No license shall be issued or renewed** pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. **No license shall be issued or renewed except** for an applicant…" N.Y. Penal Law § 400.00(1).

[11] Penal Law § 400.00(11)(a).

[12] Penal Law § 400.00(11)(a).

[13] Penal Law § 400.00(1)(b).

[14] And in spite of *Bruen,* New York's vehicle for such an administrative challenge – CPLR Article 78 – ***continues*** to impose a 'rational basis' review of decisions made by licensing officers through its "arbitrary and capricious" test. See, e.g.,  in *Kamenshchik*, at 803 (continuing to perpetuate the mantra that licensing officers have "broad discretion" to seek any information they believe will assist in evaluating the license application, and reminding that it is "well settled that a court may not substitute its judgment" for licensing officers unless the decision under review is "arbitrary and unreasonable and constitutes an abuse of discretion."

40. And the suspension or revocation of a license for any reason – not just prohibiting convictions, orders of protection, insanity, and other statutory disqualifiers - *requires* the confiscation of all handguns, shotguns, and rifles.[15]

41. Licensees with no prohibitors under state or federal law to the possession of firearms generally are subject to summary suspension and/or revocation of their license and summary confiscation of *all of guns* based solely on the "broad discretion" of a government official. See, *Juzumas v. Nassau Cnty. New York*, 33 F.4th 681, 687 (2d Cir. 2022) (confirming that Penal Law § 400.00(11) requires the confiscation of all handguns, rifles, and shotguns if a firearm license is suspended or revoked for "any of the reasons stated in § 400.00 that a person may be ineligible to obtain a handgun license."

42. 'Ineligibility' for a license includes inquiries into past arrests that resulted in a dismissal of all charges, were sealed by the court, and/or otherwise did not result in a disqualifying conviction.

43. Under New York State Executive Law § 296(16), individuals seeking a license issued under Penal Law § 400.00, *et seq.* are required to disclose past arrests and/or charges that were:

- terminated in favor of the accused (C.P.L. 160.50);

- adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or 215.10);

- youthful offender adjudications (C.P.L. 720.35);

- non-criminal violations sealed by the court (C.P.L. 160.55); and

- convictions sealed pursuant to C.P.L. 160.59 and/or 160.58.

---

[15] Penal Law § 400.00(11)(c).

44.     None of the above occurrences disqualifies an individual from purchasing, possessing, and/or carrying a rifle or shotgun under federal or New York State law.

45.     The same statute forbids potential employers from inquiring into the above events and protects applicants for employment from having to disclose the above information[16] even though employment is merely a 'privilege,' and not a Right protected by the U.S. Constitution. In an employment scenario, an "individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur." Executive Law § 296.

46.     But individuals seeking to protect themselves by exercising rights presumptively protected by the Second Amendment, like Plaintiff, are barred from responding "as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur."

47.     Executive Law § 296(16) required Plaintiff to disclose dismissed charges and non-criminal dispositions on his firearm license application, which led to his denial.

48.     Executive Law § 296(16) violates the Second and Fourteenth Amendments and must be stricken.

### NEW YORK'S STATUTORY LICENSING OFFICERS

49.     New York's statutory licensing officers are either police commissioners (New York City, Nassau County, and Suffolk County) or elected state court judges. Penal Law § 265.00(10).

50.     Police commissioners and those individuals to whom they delegate decision making authority on licensing applications, can be sued in their individual capacities when they

---

[16] "It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual…"

violate the Second and Fourteenth Amendment rights of applicants and licensees. 42 U.S.C. § 1983.

51.     As with police commissioners, all other statutory licensing officers should be treated uniformly to allow all New York applicants and licensees to be treated equally.

52.     Indeed, judicial licensing officers have not only sworn an oath to uphold the U.S. Constitution upon taking office[17], as an inferior state court they are mandated to adhere to Supreme Court precedent, particularly on constitutional issues. See, e.g., *State v. Robert V.*, 31 Misc. 3d 1210(A), 929 N.Y.S.2d 203 (Sup. Ct.), on reargument, 33 Misc. 3d 1208(A), 939 N.Y.S.2d 744 (Sup. Ct. 2011), aff'd, 111 A.D.3d 541, 975 N.Y.S.2d 390 (2013) ("this Court is constrained to follow the precedent established by the Supreme Court") citing, *Hynes v. Tomei*, 92 N.Y.2d 613, 629 (1998) (state courts are bound under the Federal Constitution to follow controlling Supreme Court precedent), cert. denied, 527 U.S. 1015 (1999); *People v. Cortes*, 80 N.Y.2d 201, 211 (1992) (trial court bound to follow existing precedent); see also, *Flanagan v. Prudential–Bache Securities, Inc.*, 67 N.Y.2d 500, 506 (1986), cert. denied 479 U.S. 931 (1986) (recognizing that state courts are bound to apply United States Supreme Court precedent and precedent from the lower Federal courts to the extent that such precedent is in agreement); *Peterson v. Martinez*, 707 F.3d 1197, 1210 (10th Cir. 2013) (inferior courts "are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.").

---

[17] Under New York State Constitution section XIII, "Members of the legislature, and all officers, executive and judicial, except such inferior officers as shall be by law exempted, shall, before they enter on the duties of their respective offices, take and subscribe the following oath or affirmation: 'I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of New York, and that I will faithfully discharge the duties of the office of ......, according to the best of my ability.'"

53.     Intentional and unmistakable disregard for Supreme Court precedent, including *Bruen*'s rejection of "discretion" in firearms licensing, requires individual accountability.

54.     Applicants and licensees outside of New York City, Nassau County, and Suffolk County – like Plaintiff – are being treated differently than their fellow citizens.

55.     Article I, § 1 of the New York State Constitution provides,

> "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his or her peers, except that the legislature may provide that there shall be no primary election held to nominate candidates for public office or to elect persons to party positions for any political party or parties in any unit of representation of the state from which such candidates or persons are nominated or elected whenever there is no contest or contests for such nominations or election as may be prescribed by general law."

56.     The actions and duties imposed on statutory licensing officers are ministerial duties - not judicial functions - because firearms licensing is not a discretionary act. Reading a criminal history report and mental health background check to determine whether an individual is prohibited from possessing firearms are ministerial functions - either an individual is firearms prohibited or they are not.  See, *People ex rel. Ferris v. Horton*, 147 Misc. 506, 507, 264 N.Y.S. 84, 86 (Co. Ct. 1933), aff'd, 239 A.D. 610, 269 N.Y.S. 579 (App. Div. 1934) (expressing the general judicial consensus that the Sullivan Law was "vulnerable" because "it imposes ministerial duties upon judicial officers. The principle is so well settled that extensive elaboration or citation of authority is not required. It is clear that ministerial duties may not be imposed upon judicial officers."

57.     Plaintiff and all similarly situated people should not be deprived of the right to redress for constitutional violations, including the right to seek monetary damages, and nominal

damages for the violation of their Second and Fourteenth Amendment rights by statutory licensing officers because of their county of residence.

## MATERIAL FACTS

58.     Plaintiff is 50 years old, married, a homeowner, a business owner, and part of 'the People' for whom the Second Amendment was codified.

59.     Plaintiff has no disqualifications to the possession, purchase, receipt, or transfer of firearms under state or federal law.

60.     Plaintiff owns rifles and shotguns, which he purchased through a federal firearms licensee (FFL/gun store) after being subjected to, and passing, federal background checks through the National Instant Criminal Background Check System (NICS).

61.     Under New York State General Business Law § 898, every[18] "sale, exchange or disposal" of a handgun, shotgun, and/or rifle must be conducted through an FFL/gun store and only after the individual passes a NICS background check.[19]

62.     Desiring to purchase, possess, and carry handguns for self-defense, Plaintiff was required to apply for a New York State pistol license because no purchase can take place without a license, and the possession of a handgun without a license is a crime. See, Penal Law § 265.00, *et. seq.*

63.     Plaintiff submitted the required State application, documents, and payment to the Westchester County Clerk's Office in 2021 to obtain a handgun license. Plaintiff was fingerprinted and photographed, and his criminal history report was obtained from the FBI and the New York State Division of Criminal Justice Services.

---

[18] Except "immediate family", which is defined as "spouses, domestic partners, children and step-children." See, GBL § 898.
[19] Upon completion of such background check, the FFL/gun store "shall complete a document, the form of which shall be approved by the superintendent of state police, that identifies and confirms that such check was performed." *Id.*

64.    After the statutory investigation was performed[20], Plaintiff's handgun license application was assigned to Defendant in her capacity as statutory licensing officer for a determination.

65.    Plaintiff's licensing file was provided to Defendant, which demonstrated that he has never been convicted of a crime, has no mental health prohibitors to the possession of firearms, and has no disqualifiers to the possession of firearms.

66.    Rather than issue a license to Plaintiff – a person who has no prohibitors to gun possession, Defendant notified Plaintiff by letter dated February 18, 2022, that she was considering denying his application.

67.    Defendant requested that Plaintiff provide additional information about past allegations, noted that his four (4) character references had no knowledge of the past allegations (which never resulted in a criminal conviction), and sought "further assurances" that Plaintiff's "character references have sufficient knowledge of your temperament and behavior to render a competent opinion as to your moral character..."

68.    Plaintiff provided Defendant with a written explanation of a verbal argument in 2016 between Plaintiff and his wife, in Portuguese, during which a neighbor (who does not speak Portuguese) called the police.  Plaintiff's wife, who was upset that she was home with the baby all of the time, took the couple's infant daughter and walked out of the house, intending to walk to the home of a nearby friend. Plaintiff continued the conversation – still in Portuguese – outside with Plaintiff telling his wife that it was ridiculous to walk to her friend's house, and that she should just take the car.

---

[20] Penal Law § 400.00(4).

69.     Defendant's post-*Bruen* February 22, 2023 written denial of Plaintiff's firearms license application (the "Decision")  is repugnant to the *Bruen* decision and the plain text of the Second Amendment. As if *Heller*, *McDonald*, and *Bruen* never existed, Defendant found that

> "upon the record presented, the Court recognizes that upon its review of a pistol license application, ***it is vested with a substantial and legitimate interest, and a grave responsibility, for ensuring the safety of the general public***. In this regard, it is ***well-settled that licensing  officers are vested with broad discretion*** in determining pistol license applications and are required  to exercise their judgement on the basis of a total evaluation of all relevant factors (see *Fulco v McGuire*, 81 AD2d 509)." (emphasis added).

70.     Defendant made factual assessments, speculating and opining that Plaintiff suffered from a "novel, struggle with aggression and violence under circumstances that don't appear (without more information made available) to be related to his self-defense, and appear to be otherwise unjustified by the known attendant circumstances."

71.     Defendant went on,

> the "circumstances surrounding the applicant's two previous arrests are relevant to the Court's consideration of ***the merits of the instant application***, as such circumstances serve to inform the Court ***irrespective of the dismissal*** of one series of charges and the disposition of the second and more recent set of charges by a negotiated  plea to a ***violation-level offense*** (see *Matter of Robbins v Warhit*, 198 AD3d 790, 791; see also *Maller of Tuttle v Cacace*, 164 AD3d 678, 678; *Matter of kellly* [sic] *v Klein*, 96 AD3d 846, 847)." (emphasis added).

72.     Defendant denied Plaintiff's application "as an exercise of [her]  broad discretion…", because "without more information having been made available to mitigate" her opinion (notwithstanding Plaintiff's written explanation as described above), Defendant reached the

> "conclusion that the applicant does not possesses the necessary ***character, temperament, judgment and maturity that is required*** for the proper issuance

of a New York State Pistol/Revolver License allowing him to carry and use a handgun for any purpose and which otherwise constitutes good cause[21] for the denial of his   present application pursuant to Penal Law§ 400.00(l)(g) (see *Marino v Hubert*, 117 AD3d 829; see also *Velez v DiBella*, 77 AD3d 670; *Matter of Gonzalez v Lawrence*, 36 AD3d 807, 808; *Fromson v Nelson*, 178 AD2d 479; *Anderson v Mogavero*, 116 AD2d 885)." (emphasis added).

73.     Defendant was "bound to adhere not only to results of [U.S. Supreme Court] cases, but also to their explications of the governing rules of law." See, e.g., *County of Allegheny v. ACLU*, Greater *Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) (Kennedy, J., dissenting); see also *Balintulo v. Daimler AG*, 190 (2d Cir. 2013) (Lower courts are bound and are without authority to "reinterpret" the Supreme Court's binding precedent); *NLRB v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Local 229, AFL-CIO*, 974 F.3d 1106, 1116 (9th Cir. 2020) ("Lower court judges don't have license to adopt a cramped reading of a case in order to functionally overrule it.").

74.     Defendant's denial of Plaintiff's application was based entirely on an "appraisal of facts, the exercise of judgment, and the formation of an opinion"[22] – factors rebuked by the *Bruen* Court - to reach the conclusions in the "exercise of broad discretion" that Plaintiff "does not possess the necessary character, temperament, judgment and maturity that is required" to possess and carry a handgun.

75.     Defendant's exercise of discretion and application of subjective criteria is inconsistent with the plain text of the Second Amendment, and in direct conflict with *Heller*, *McDonald,* and *Bruen*.

---

[21] "Good cause" was repealed as a statutory basis for denial of a handgun license on September 1, 2022. "Good cause" was, therefore, not a statutory basis to deny Plaintiff's application in February 2023.
[22] *Bruen*, at 2138, n. 9.

76.     Plaintiff's conduct – possessing a handgun for self-defense and carrying a handgun in public for self-defense – is presumptively protected by the Second Amendment.[23]

77.      By depriving Plaintiff of the right to engage in conduct "presumptively protected" by the Second Amendment[24] - the right to possess (keep) and carry (bear) handguns (Arms), Defendant violated Plaintiff's Second and Fourteenth Amendment rights.

78.     Second Amendment rights are not contingent upon a government official's subjective opinion – the Amendment's ratification was the "very product of an interest balancing by the people" and "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. It is this balance—struck by the traditions of the American people - that demands our unqualified deference." *Bruen*, at 2131 (citation omitted).

79,     There is no historical tradition of a governmental barrier to the possession of weapons for self-defense based on petty and/or nominal offenses, non-criminal adjudications, and/or the subjective opinions of a government official.

80.     Plaintiff is suffering and continues to suffer the deprivation of guaranteed individual rights that are presumptively protected by the Second and Fourteenth Amendments.

81.     Plaintiff has suffered an injury-in-fact, to wit, the absolute barrier to conduct covered by the plain text of the Second Amendment. Plaintiff will continue to suffer such injury-in-fact without the relief requested herein.

82.     Plaintiff seeks to hold Defendant personally liable for the violations of his constitutional rights through, *inter alia*, an award of nominal damages just as the residents of New

---

[23] "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126. "The Court has little difficulty concluding also that the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct - carrying handguns publicly for self-defense." *Bruen*, at 2119.

[24] "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126.

York City, Nassau County, and Suffolk County are able to seek full redress against licensing officers in those jurisdictions.

83.     Only through the imposition of personal liability and nominal damages will New York's judicial licensing officials be motivated to soberly adhere to the Second and Fourteenth Amendments.

## AS AND FOR A FIRST CAUSE OF ACTION

84.     Repeats and realleges paragraphs "1" through and including "83."

85.     Under the theory that New York State's discretionary "shall-not-issue-unless" licensing scheme, Penal Law § 400.00, *et seq.* violates the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

86.     Repeats and realleges paragraphs "1" through and including "85."

87.     Under the theory that Defendant violated Plaintiff's Second and Fourteenth Amendment rights. 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

88.     Repeats and realleges paragraphs "1" through and including "87."

89.     Requiring an individual to seek and obtain permission the government to exercise the pre-existing right to purchase, possess, and/or carry a weapon in common use for self-defense is inconsistent with the text, history, and tradition test announced in *Bruen* and is frustrates the plain text of the Second Amendment, which mandates that the "right to keep and bear Arms shall not be infringed."

90.     Under the theory that New York's requirement that the lawful possession, purchase, and/or carriage of firearms requires individuals to seek and obtain permission from the government

before engaging in presumptively protected conduct violates the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

91.     Repeats and realleges paragraphs "1" through and including "90."

92.     The disclosure requirements under New York Executive Law § 296(16) for applicants for a license issued under Penal Law § 400.00, *et seq.* violate the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

## AS AND FOR A FIFTH CAUSE OF ACTION

93.     Repeats and realleges paragraphs "1" through and including "92."

94.     Immunity for statutory licensing officers outside of New York City, Nassau County, and Suffolk County from lawsuits seeking redress for violations of the Second (and Fourteenth) Amendments violates Plaintiff's rights under Article I, § 1 of the New York State Constitution.

## AS AND FOR A SIXTH CAUSE OF ACTION

95.     Repeats and realleges paragraphs "1" through and including "94."

96.     Immunity for statutory licensing officers outside of New York City, Nassau County, and Suffolk County from lawsuits seeking redress for violations of the Second (and Fourteenth) Amendments, including nominal damages, violates Plaintiff's right to equal protection under the law in violation of the Fourteenth Amendment. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a Judgment and Order:

- Declaring that New York's requirement that the lawful possession, purchase, and/or carriage of firearms for self-defense requires that individuals seek and obtain permission from the government violates the Second and Fourteenth Amendments as there is no

historical tradition of requiring government permission or a license to possess and/or carry firearms;

- Declaring that New York State's discretionary licensing scheme, Penal Law § 400.00, *et seq.*, violates the Second and Fourteenth Amendments and striking it in its entirety;

- Declaring that the disclosure requirements under New York Executive Law 296(16) for firearms license applicants violate the Second and Fourteenth Amendments, and preliminarily and permanently enjoining that portion of the statute;

- Declaring that Defendant violated Plaintiff's Second and Fourteenth Amendment rights;

- Declaring that immunity for statutory licensing officers outside of New York City, Nassau County, and Suffolk County from lawsuits seeking redress for violations of the Second and Fourteenth Amendments violates Article I, § 1 of the New York State Constitution;

- Declaring that immunity for statutory licensing officers outside of New York City, Nassau County, and Suffolk County from lawsuits seeking redress for violations of the Second and Fourteenth Amendments, including nominal damages, violates Plaintiff's right to equal protection under the law in violation of the Fourteenth Amendment. 42 U.S.C. § 1983;

- Awarding nominal damages to Plaintiff for the presumed violation of his constitutional rights;

- Awarding statutory attorney's fees to Plaintiff pursuant to 42 U.S.C. 1988 and any other relevant statute;

- Awarding costs and disbursements to Plaintiff; and

- Awarding such other, further, and different relief as this Court may deem just and proper.

Dated: August 22, 2023
      Scarsdale, New York

                        THE BELLANTONI LAW FIRM, PLLC
                        *Attorneys for Plaintiff*

By:   *Amy L. Bellantoni*
                        Amy V. Bellantoni, Esq.
                        2 Overhill Road, Suite 400
                        Scarsdale, New York 10583
                        abell@bellantoni-law.com