UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANTERO OLIVEIRA,

|                        |                    |                        |
|------------------------|--------------------|------------------------|
|                        | Plaintiff,         | 23 Civ. 7427 (PMH)     |
| -against-              |                    | **FIRST AMENDED COMPLAINT** |

LARRY SCHWARTZ, in his official capacity as
a statutory pistol licensing officer for
Westchester County,

                                          Defendant.
------------------------------------------------------------------x

Plaintiff, ANTERO OLIVEIRA, by his attorneys The Bellantoni Law Firm, PLLC, as and for his First Amended Complaint respectfully states:

1.      In its June 23, 2022 Opinion in *NYSRPA v. Bruen*[1], the Supreme Court explicitly rebuked discretionary firearm licensing regimes with subjective criteria "like New York's" that "require the appraisal of facts, the exercise of judgment, and the formation of an opinion…" *Bruen*, 2138 n. 9.

2.      The *Bruen* Court cautioned 6 outlier states, including New York, that the survival of their may-issue licensing schemes is contingent upon the transition to a shall-issue scheme with objective criteria. *Id.*

3.      One year later, New York's Legislature and licensing officers continue to disregard Supreme Court precedent – perpetuating a decades-old and grossly unconstitutional "shall-not-issue-except" licensing scheme that imbues "broad discretion" in its licensing officers and imposes subjective criteria upon a preexisting protected right.

---

[1] 142 S.Ct. 2111 (2022).

1

4.      Plaintiff has no disqualifiers to the lawful possession of firearms under state or federal law.

5.      But under New York's licensing scheme, a Westchester County statutory pistol licensing officer exercised "broad discretion" and the "appraisal of facts, the exercise of judgment, and the formation of an opinion"[2] to deprive Plaintiff of the Right to purchase, possess, and carry handguns for self-defense.

6.      Plaintiff challenges the exercise of discretion imbued in the New York State statutory pistol licensing officers by the state's licensing scheme – both facially and as applied to Plaintiff.

7.      New York's failure to heed the Supreme Court's warning in *Bruen* calls out for this Court to strike the State's unconstitutional "shall-not-issue-except" licensing scheme in its entirety.

8.      Over half of this Nation's states are "constitutional carry" (permitless) jurisdictions[3] that adhere to the plain text of the Second Amendment.

9.      And while the *Bruen* Court sanctioned existing "shall-issue" regimes, which New York still has not become, the imposition of *any* licensing requirement as a prerequisite to the exercise of presumptively protected – and **preexisting**[4] - right violates the plain text of the Second Amendment and has no historical analogue.

---

[2] *Bruen*, at 2138, n.9 (rejecting as unconstitutional the "appraisal of facts, the exercise of judgment, and the formation of an opinion - features that typify proper-cause standards like New York's").
[3] https://worldpopulationreview.com/state-rankings/constitutional-carry-states
[4] "…it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right…this is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed." *D.C. v. Heller*, 554 U.S. 570, 592 (2008) quoting, *United States v. Cruikshank*, 92 U.S. 542, 553 (1876) (emphasis supplied) (cleaned up).

10.     Rarely acknowledged, the 'plain text' mandates the Right **"shall not be infringed."**

## NATURE OF THE ACTION

11.     This is an action for declaratory and injunctive relief, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for continuing irreparable harm to Plaintiff arising from violations of his constitutional rights as codified in, and protected by, the Second Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment. 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

12.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution. This action also seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

13.     Antero Oliveira (hereinafter "Plaintiff") is a natural person and a resident of Westchester County, State of New York.

14.     Defendant   LARRY SCHWARTZ ("Defendant") is sued herein in his official capacity as a statutory pistol licensing officer for Westchester County, New York acting under color of law by the statutory authority granted under Penal Law §§ 265.00(10) and 400.00, *et. seq.*

15.     As a statutory pistol licensing officer for Westchester County, Defendant has the authority to provide Plaintiff with the equitable relief sought herein.

16.     As a statutory pistol licensing officer, Defendant is authorized to issue, deny, suspend, and/or revoke licenses issued pursuant to Penal Law § 400.00, *et seq.*, is charged with enforcing the provisions of the state's licensing statute, and in fact does enforce and implement the licensing statute.

## CONSTITUTIONAL FRAMEWORK

17.     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

18.     The Second Amendment codifies a "preexisting right."

> "[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.
>
> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed …."[5]

19.     The 'inherent right of self-defense' is central to the Second Amendment right.[6] "Self-defense had little to do with the right's codification; it was the *central component* of the right itself." *D.C. v. Heller*, 554 U.S. 570, 599 (2008) (emphasis supplied).

20.     The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, at 580.

---

[5] *Heller*, at 592 (emphasis supplied) quoting, *Cruikshank*, supra.
[6] *Heller*, at 628.

> " '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

21.     The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

22.     The Second Amendment *presumptively* protects the right to possess and carry all weapons in common use for self-defense. *Bruen*, at 2132 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

23.     Handguns are weapons in common use for self-defense and are protected within the scope of the Second Amendment. *Heller,* at 628 (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

24.    In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[7], and *Caetano*.[8]

25.    Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment:

26.    "We reiterate that the standard for applying the Second Amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

27.    "But to the extent that later history contradicts what the text says, the text controls." *Bruen*, at 2137.

### The Supreme Court Has Rejected 'Discretion' <u>Three Separate Times</u>

28.    Relying on text, history, and tradition, the Supreme Court decisions in *Heller* and *McDonald* <u>explicitly rejected the use of  discretion</u> in the context of Second Amendment rights.

29.    "The very enumeration of the [Second Amendment] right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis

---

[7] *McDonald v. Chicago*, 561 U.S. 742 (2010).

[8] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at 2127. See also, *Caetano*, supra.

whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, at 634-35 (emphasis supplied).

30.    The *McDonald* Court rejected the notion that incorporating the 14th Amendment "will require judges to assess the costs and benefits of firearms restrictions" and "make difficult empirical judgments in an area in which they lack expertise", a view expressed in Justice Breyer's dissent. *McDonald*, at 790-91. "As we have noted, while [Justice Breyer's dissenting] opinion in *Heller* recommended an interest-balancing test, the Court specifically rejected that suggestion." *McDonald*, at 790-91.

31.    Adhering to Supreme Court precedent rejecting judicial discretion, the *Bruen* Court rebuked the use of discretionary and subjective factors in firearms regulation, and affirmatively rejected licensing regimes "like New York's" that "require[e] the appraisal of facts, the exercise of judgment, and the formation of an opinion…" *Bruen*, 2138 n. 9.

32.    *Bruen* found New York's discretionary licensing scheme "unusual" and "constitutionally problematic," in part, because it grants open-ended discretion to licensing officials. *Bruen*, at 2161.

33.    And *Bruen*'s nod to shall-issue regimes, which have no historical analogue and themselves conflict with the plain text, was not an imprimatur of 'objective' criteria – it was a placeholder.

34.    Under the *Bruen* test, and Supreme Court precedent, any post-ratification restriction that conflicts with the plain text must be rejected as unconstitutional. *Bruen*, at  2137.

## NEW YORK STATE LICENSING SCHEME

35.     Requiring an individual to seek and obtain a license from the government to exercise the pre-existing right to purchase, possess, and/or carry a weapon in common use for self-defense does not survive the text, history, and tradition test announced in *Bruen* and is **patently inconsistent** with the plain text of the Second Amendment, which forbids any infringement of the right to possess and carry weapons.

36.     After *Bruen*, New York State neither fell in line with its sister "constitutional carry" states nor did it heed the Supreme Court's warning; licensing officers remain empowered with 'broad discretion' to deny licenses to people who, like Plaintiff, are not prohibited under state or federal law from possessing firearms.[9]

37.     Over a year later, New York has taken no steps to bring its firearm regulations into constitutional compliance. In toddler-like fashion, the State dug in its heels, defiant to the Constitution and the United States Supreme Court.[10]

38.     New York continues to impose a shall-not-issue-unless[11] licensing scheme that requires subjective opinion forming in the denial, issuance, renewal, suspension, and revocation of a license.

39.     But even securing a license in New York does not solidify one's Second Amendment Rights. Licensees are constantly under the unyielding judgmental discretion of a public servant.

---

[9] The term "firearms" as used herein refers generally to handguns, rifles, shotguns, and "other firearms."
[10] https://www.youtube.com/watch?v=gC1L2rrztQs
[11] "**No license shall be issued or renewed** pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. **No license shall be issued or renewed except** for an applicant…" N.Y. Penal Law § 400.00(1).

40.      Under the scheme, "a license may be revoked and cancelled at any time" by a licensing officer – even for events and conditions that do not disqualify the licensee from lawfully possessing firearms under state or federal law.[12] A firearms license can be suspended or revoked if "***at any time***" a licensee becomes "ineligible to obtain a license, including engaging in conduct that would have resulted in the denial of a license…"[13]

41.      Meaning that ***anything*** that the licensing officer feels shows that a licensee has 'lost' essential character, temperament, and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others"[14] constitutes grounds for suspension and/or revocation.[15]

42.      And the suspension or revocation of a license for *any reason* – not just prohibiting convictions, orders of protection, insanity, and other statutory disqualifiers - ***requires*** the confiscation of all handguns, shotguns, and rifles.[16]

43.      Licensees with no prohibitors under state or federal law to the possession of firearms generally are subject to summary suspension and/or revocation of their license and summary confiscation of ***all of guns*** based solely on the "broad discretion" of a government official. See, *Juzumas v. Nassau Cnty. New York*, 33 F.4th 681, 687 (2d Cir. 2022) (confirming that Penal Law § 400.00(11) requires the confiscation of all handguns, rifles, and shotguns if a firearm

---

[12] Penal Law § 400.00(11)(a).
[13] Penal Law § 400.00(11)(a).
[14] Penal Law § 400.00(1)(b).
[15] And in spite of *Bruen,* New York's vehicle for such an administrative challenge – CPLR Article 78 – ***continues*** to impose a 'rational basis' review of decisions made by licensing officers through its "arbitrary and capricious" test. See, e.g.,  in *Kamenshchik*, at 803 (continuing to perpetuate the mantra that licensing officers have "broad discretion" to seek any information they believe will assist in evaluating the license application, and reminding that it is "well settled that a court may not substitute its judgment" for licensing officers unless the decision under review is "arbitrary and unreasonable and constitutes an abuse of discretion."
[16] Penal Law § 400.00(11)(c).

license is suspended or revoked for "any of the reasons stated in § 400.00 that a person may be ineligible to obtain a handgun license."

44.     'Ineligibility' for a license includes inquiries into past arrests that resulted in a dismissal of all charges, were sealed by the court, and/or otherwise did not result in a disqualifying conviction.

45.     Under New York State Executive Law § 296(16), individuals seeking a license issued under Penal Law § 400.00, *et seq.* are required to disclose past arrests and/or charges that were:

- terminated in favor of the accused (C.P.L. 160.50);

- adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or 215.10);

- youthful offender adjudications (C.P.L. 720.35);

- non-criminal violations sealed by the court (C.P.L. 160.55); and

- convictions sealed pursuant to C.P.L. 160.59 and/or 160.58

46.     None of the above occurrences disqualifies an individual from purchasing, possessing, and/or carrying a rifle or shotgun under federal or New York State law.

47.     The same statute forbids potential employers from inquiring into the above events and protects applicants for employment from having to disclose the above information[17] even though employment is merely a 'privilege,' and not a Right protected by the U.S. Constitution. In an employment scenario, an "individual required or requested to provide information in violation

---

[17] "It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual…"

of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur." Executive Law § 296.

48.     But individuals seeking to protect themselves by exercising rights presumptively protected by the Second Amendment, like Plaintiff, are barred from responding "as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur."

49.     Executive Law § 296(16), enforced by all New York State licensing officers, including Defendant, required Plaintiff to disclose dismissed charges and non-criminal dispositions on his firearm license application, which led to his denial.

50.     Had Plaintiff's dismissed charges and non-criminal dispositions, which do not disqualify Plaintiff from firearm possession under state or federal law, not been disclosed and/or considered by the licensing officer, Plaintiff's application would not have been denied.

51.     Executive Law § 296(16) violates the Second and Fourteenth Amendments and must be stricken.

## NEW YORK'S STATUTORY LICENSING OFFICERS

52.     New York's statutory licensing officers are either police commissioners (New York City, Nassau County, and Suffolk County) or are judicial licensing officers (every other county in New York State). Penal Law § 265.00(10).

53.     However, not every judge in the state has licensing authority – only those sitting in the courts enumerated by statute. Penal Law § 265.00(10).

54.     The front of every pistol license issued in Westchester County bears the signature of the licensing officer who issued the license.

55.     Every licensing officer outside of New York City, Nassau County and Suffolk County is an elected official, including Westchester County.

56.     Police commissioners, and those individuals to whom they delegate decision making authority on licensing applications, enforce and administer the state's licensing scheme for handguns.

57.     Like the police commissioners of New York City, Nassau County, and Suffolk County, licensing officers in the rest of New York State, including Defendant, enforce and administer the state's licensing scheme for handguns.

58.     As creatures of statute, all authority and power vested in a licensing officer comes from the licensing statute itself - Penal Law 400.00, *et seq.*

59.     The actions and duties imposed on the licensing officers by statute are executive and administrative functions.

60.     New York appellate courts have consistently recognized that a judicial licensing officer acts in an "administrative capacity as the firearms licensing officer for [their] County under Penal Law §§ 400.00(11) and 265.00(10)" [*Cnty. of Westchester v. D'Ambrosio*, 244 A.D.2d 334, 334 (2d Dept. 1997)] and not a judicial capacity.

61.     The Appellate Divisions also hold that "determinations by judicial licensing officers is not by direct appeal but by commencement of a CPLR article 78 proceeding in the Appellate Division." *Cnty. of Westchester*, at 334 citing  CPLR  7801;  CPLR  506[b][1]; *Matter  of  Schnell  v.  Spano*,  120 A.D.2d 669, *In re Shuler*, 67 A.D.3d 1020 (2d Dept. 2009) (appropriate procedure for seeking review of a determination of  a County Court Judge acting in "administrative capacity as the firearms  licensing officer for Westchester County" is Article 78) (emphasis added); *Matter of Panaro*, 250 A.D.2d 616 (2d Dept. 1998)  (appropriate  procedure for seeking review of a determination of a County Court Judge acting in "administrative capacity as the firearms licensing officer for Westchester County" is Article 78) (emphasis added).

62.     All Article 78 proceedings challenging the licensing determinations of a licensing officer (judicial and non-judicial), are captioned and brought against such licensing officer "in  their capacity as a statutory licensing officer."

63.     Statutory pistol licensing officers, like Defendant, enforce and administer Penal Law 400.00.

64.     No provision of 400.00 provides licensing officers with authority to adjudicate claims between parties.

65.     Licensing officers in New York State are neither impartial nor neutral when exercising their duties; under the state's discretionary licensing scheme, licensing officers impose their own views, subjective opinions, and discretion to decide whether an individual may or may not exercise a constitutional right. The right to possess and/or carry a handgun for self-defense is determined on a case-by-case basis.

66.     Under the licensing statute, no claims are litigated, no pleadings filed, no Index number obtained, no court "proceeding" is initiated, and no applicant for a license to merely exercise a constitutionally protected right can be considered a  "litigant" in a court "action."

67.     The State's overhaul of the statutory schemes for pistol licenses and criminal statutes related to firearms was undertaken with significant input from "each of the sixty-two district  attorneys, nearly all criminal court  judges  (83 County Judges and  General Session Justices),  [and] police chiefs (87)" by questionnaire that sought their respective "opinion  on specific,   concrete proposals to reorder, rearrange, standardize and conform to judicial construction  existing  New  York  statutes." Written input from the Judicial Conference of the State of New York, the Executive Department of the New York State Police, among others, was

utilized in the promulgation of the pistol licensing statute. To that end, the licensing officers were directly involved in the creation of the State's licensing scheme.

68.    Unlike the role of the judiciary, which are tasked with interpreting statutes, pistol licensing officers enforce the statute and, as noted immediately above, were involved in its creation.

## MATERIAL FACTS

69.    Plaintiff is 50 years old, married, a homeowner, a business owner, and part of 'the People' for whom the Second Amendment was codified.

70.    Plaintiff has no disqualifications to the possession, purchase, receipt, or transfer of firearms under state or federal law.

71.    Plaintiff owns rifles and shotguns, which he purchased through a federal firearms licensee (FFL/gun store) after being subjected to, and passing, federal background checks through the National Instant Criminal Background Check System (NICS).

72.    Under New York State General Business Law § 898, every[19] "sale, exchange or disposal" of a handgun, shotgun, and/or rifle must be conducted through an FFL/gun store and only after the individual passes a NICS background check.[20]

73.    Desiring to purchase, possess, and carry handguns for self-defense, Plaintiff was required to apply for a New York State pistol license because no purchase can take place without a license, and the possession of a handgun without a license is a crime. See, Penal Law § 265.00, *et. seq.*

---

[19] Except "immediate family," which is defined as "spouses, domestic partners, children and step-children." See, GBL § 898.
[20] Upon completion of such background check, the FFL/gun store "shall complete a document, the form of which shall be approved by the superintendent of state police, that identifies and confirms that such check was performed." *Id.*

74.     Plaintiff submitted the required State application, documents, and payment to the Westchester County Clerk's Office in 2021 to obtain a handgun license. Plaintiff was fingerprinted and photographed, and his criminal history report was obtained from the FBI and the New York State Division of Criminal Justice Services.

75.     After the statutory investigation was performed[21], Plaintiff's handgun license application was assigned to one of the Westchester County pistol licensing officers for a determination.[22]

76.     Plaintiff's pistol license file demonstrated that he has never been convicted of a crime, has no mental health prohibitors to the possession of firearms, and has no disqualifiers to the possession of firearms under state or federal law, evidenced by the fact that he already owns of rifles and shotguns.

77.     Rather than issue a license to Plaintiff – a person who has no prohibitors to gun possession- the licensing officer notified Plaintiff by letter dated February 18, 2022, that she was considering denying his application.

78.     The licensing officer requested that Plaintiff provide additional information about past allegations, noted that his four (4) character references had no knowledge of the past allegations (which never resulted in a criminal conviction), and sought "further assurances" that Plaintiff's "character references have sufficient knowledge of your temperament and behavior to render a competent opinion as to your moral character..."

79.     Plaintiff provided the licensing officer with a written explanation of a verbal argument in 2016 between Plaintiff and his wife, in Portuguese, during which a neighbor (who

---

[21] Penal Law § 400.00(4).
[22] The Westchester County licensing officer who denied Plaintiff's application, Susan Cacace, is no longer employed as a licensing officer. This First Amended Complaint substitutes Defendant in his official capacity in her stead.

does not speak Portuguese) called the police. Plaintiff's wife, who was upset that she was home with the baby all of the time, took the couple's infant daughter and walked out of the house, intending to walk to the home of a nearby friend. Plaintiff continued the conversation – still in Portuguese – outside with Plaintiff telling his wife that it was ridiculous to walk to her friend's house, and that she should just take the car.

80.     Post-*Bruen*, on February 22, 2023 the licensing officer issued a  written denial of Plaintiff's firearms license application (the "Decision").[23] The Decision  is repugnant to the *Bruen* decision and the plain text of the Second Amendment.

81.     As if *Heller*, *McDonald*, and *Bruen* never existed, the licensing officer found that

> "upon the record presented, the Court recognizes that upon its review of a pistol license application, ***it is vested with a substantial and legitimate interest, and a grave responsibility, for ensuring the safety of the general public***. In this regard, it is ***well-settled that licensing  officers are vested with broad discretion*** in determining pistol license applications and are required   to exercise their judgement on the basis of a total evaluation of all relevant factors (see *Fulco v McGuire*, 81 AD2d 509)." (emphasis added).

82.     The licensing officer made factual assessments, speculating and opining that Plaintiff suffered from a "novel, struggle with aggression and violence under circumstances that don't appear (without more information made available) to be related to his self-defense, and appear to be otherwise unjustified by the known attendant circumstances."

83.     The licensing officer went on,

> the "circumstances surrounding the applicant's two previous arrests are relevant to the Court's consideration of ***the merits of the instant application***, as such circumstances serve to inform the Court ***irrespective of the dismissal*** of one series of charges and the disposition of the second and more recent set of charges by a negotiated   plea to a ***violation-level offense*** (see *Matter of Robbins v*

---

[23] The licensing officer has since retired. According to the Westchester County Court calendar office, all of her pistol license applications were reassigned to Defendant.

*Warhit*, 198 AD2d 790, 791; *see also Maller of Tuttle v Cacace*, 164 AD3d 678, 678; *Matter of kelly* [sic] *v Klein*, 96 AD3d 846, 847).” (emphasis added).

84.     The licensing officer denied Plaintiff's application “as an exercise of [her] broad discretion…” because “without more information having been made available to mitigate” her opinion (notwithstanding Plaintiff's written explanation as described above). She reached the

> “conclusion that the applicant does not possesses the necessary ***character, temperament, judgment and maturity that is required*** for the proper issuance of a New York State Pistol/Revolver License allowing him to carry and use a handgun for any purpose and which otherwise constitutes good cause[24] for the denial of his  present application pursuant to Penal Law§ 400.00(l)(g) (see *Marino v Hubert*, 117 AD3d 829; *see also Velez v DiBella*, 77 AD3d 670; *Matter of Gonzalez v Lawrence*, 36 AD3d 807, 808; *Fromson v Nelson*, 178 AD2d 479; *Anderson v Mogavero*, 116 AD2d 885).” (emphasis added).

85.     In finding that Plaintiff does not possess the necessary character, the licensing officer *de facto* denied Plaintiff's application under Penal Law 400.00(1)(b), which authorizes the licensing officers to make an subjective assessments that an applicant is “(b) of good moral character, which, for the purposes of this article, shall mean having the essential ***character, temperament and judgement*** necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others.” (emphasis added).

86.     The licensing officer was “bound to adhere not only to results of [U.S. Supreme Court] cases, but also to their explications of the governing rules of law.” See, e.g., *County of Allegheny v. ACLU*, Greater *Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) (Kennedy, J., dissenting); *see also Balintulo v. Daimler AG*, 190 (2d Cir. 2013) (Lower courts are bound and are without authority to “reinterpret” the Supreme Court's binding precedent); *NLRB v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Local 229, AFL-CIO*, 974 F.3d

---

[24] “Good cause” was repealed as a statutory basis for denial of a handgun license on September 1, 2022. “Good cause” was, therefore, not a statutory basis to deny Plaintiff's application in February 2023.

1106, 1116 (9th Cir. 2020) ("Lower court judges don't have license to adopt a cramped reading of a case in order to functionally overrule it.").

87.     The licensing officer's denial of Plaintiff's application was based entirely on an "appraisal of facts, the exercise of judgment, and the formation of an opinion" [25] – factors rebuked by the *Bruen* Court - to reach the conclusions in the "exercise of broad discretion" that Plaintiff "does not possess the necessary character, temperament, judgment and maturity that is required" to possess and carry a handgun.

88.     The licensing officer's exercise of discretion and application of subjective criteria is inconsistent with the plain text of the Second Amendment, and in direct conflict with *Heller*, *McDonald,* and *Bruen*.

89.     Plaintiff's conduct – possessing a handgun for self-defense and carrying a handgun in public for self-defense – is presumptively protected by the Second Amendment.[26]

90.      By depriving Plaintiff of the right to engage in conduct "presumptively protected" by the Second Amendment[27] - the right to possess (keep) and carry (bear) handguns (Arms), the licensing officer violated Plaintiff's Second and Fourteenth Amendment rights.

91.     Second Amendment rights are not contingent upon a government official's subjective opinion – the Amendment's ratification was the "very product of an interest balancing by the people" and "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. It is this balance—struck by the traditions of the American people – that demands our unqualified deference." *Bruen*, at 2131 (citation omitted).

---

[25] *Bruen*, at 2138, n. 9.
[26] "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126. "The Court has little difficulty concluding also that the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct - carrying handguns publicly for self-defense." *Bruen*, at 2119.
[27] "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126.

92.     There is no historical tradition of a governmental barrier to the possession of weapons for self-defense based on petty and/or nominal offenses, non-criminal adjudications, and/or the subjective opinions of a government official.

93.     Plaintiff intends to reapply, and would have already reapplied for a New York State pistol license in Westchester County but the Westchester County licensing officers routinely exercise broad and wide discretion to deny pistol license applications by based on charges that were dismissed and sealed, non-criminal convictions, and any other subjective factor that can be used to deny an application – rather than objective criteria like disqualifying convictions, of which Plaintiff has none.

94.     Defendant routinely exercises broad and wide discretion to deny pistol license applications based on charges that were dismissed and sealed, non-criminal convictions, and any other subjective factor that can be used to deny an application.

95.     Moreover, once a pistol license has been denied, the denial and all related correspondence remain in the applicant's pistol licensing file; that information is routinely used by subsequent licensing officer to, once again, deny the applicant.

96.     And with a reapplications, the Westchester County Department of Public Safety ("DPS"), routinely drafts a letter to the licensing officer, signed by the investigator, sergeant, and a captain recommending to the (publicly elected) licensing officer that the reapplication be denied. Rarely, if ever, do the licensing officers, including Defendant, approve an application where the DPS recommends otherwise.

97.     Plaintiff's reapplication for a pistol license in Westchester County would be futile without the injunctive relief sought herein. If granted, the injunctive relief would prevent the use

of discretion, and prevent the licensing officer's reliance on subjective and/or non-disqualifying factors, ensuring the issuance of a license to Plaintiff.

98.     Plaintiff is suffering and continues to suffer the deprivation of guaranteed individual rights that are presumptively protected by the Second and Fourteenth Amendments.

99.     Plaintiff has suffered an injury-in-fact, to wit, the absolute barrier to conduct covered by the plain text of the Second Amendment as a result of the exercise of discretion authorized by New York's licensing scheme, and the consideration of dismissed charges and non-criminal convictions. Plaintiff will continue to suffer such injury-in-fact without the relief requested herein.

100.    Defendant, as a Westchester County pistol licensing officer, has the authority to provide Plaintiff with the relief sought herein.

## AS AND FOR A FIRST CAUSE OF ACTION

101.    Repeats and realleges paragraphs "1" through and including "100."

102.    Under the theory that New York State's discretionary, "shall-not-issue-unless" licensing scheme, Penal Law § 400.00, *et seq.* violates the Second and Fourteenth Amendments, facially and as applied to Plaintiff. 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

103.    Repeats and realleges paragraphs "1" through and including "102."

104.    Under the theory that the denial of Plaintiff's pistol license application violated Plaintiff's Second and Fourteenth Amendment rights. 42 U.S.C. § 1983.

## AS AND FOR A THIRD CAUSE OF ACTION

105.    Repeats and realleges paragraphs "1" through and including "104."

106.    Under the theory that the disclosure requirements under New York Executive Law § 296(16) for applicants for a license issued under Penal Law § 400.00, *et seq.* – and the licensing officer's consideration thereof in making licensing determinations - violate the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a Judgment and Order:

- Declaring that New York's requirement that the lawful possession, purchase, and/or carriage of firearms for self-defense requires that individuals seek and obtain permission from the government violates the Second and Fourteenth Amendments as there is no historical tradition of requiring government permission or a license as a prerequisite to possessing and/or carrying firearms;

- Declaring that New York State's discretionary licensing scheme, Penal Law § 400.00, *et seq.*, violates the Second and Fourteenth Amendments and striking it in its entirety;

- Declaring that Penal Law 400.00(1)(b) violates the Second and Fourteenth Amendments facially and as applied to Plaintiff, and enjoining its enforcement generally and as applied to Plaintiff;

- Declaring that the disclosure requirements under New York Executive Law 296(16) for firearms license applicants violate the Second and Fourteenth Amendments and (i) permanently enjoining that portion of the statute, and (ii) permanently enjoining the consideration of such information by Defendant and all other New York State pistol licensing officers who receive notice of the Court's Order;

- Declaring that Plaintiff's Second and Fourteenth Amendment rights were violated by the licensing officer's (i) exercise of discretion to deny his application in the absence of a statutory prohibitor under federal or state law; and (ii) consideration of dismissed charges and non-criminal convictions to prevent him from exercising the right to possess and carry handguns for self-defense and permanently enjoining such conduct by Defendant and all other New York State pistol licensing officers who receive notice of the Court's Order;

- Ordering Defendant, in his capacity as a statutory pistol licensing officer for Westchester County, to issue Plaintiff the license applied for or, in the alternative, to accept a new application for a pistol license upon presentation by Plaintiff[28] and render a determination thereon consistent with this Court's determination of Plaintiff's claims for equitable relief;

- Awarding statutory attorney's fees to Plaintiff pursuant to 42 U.S.C. 1988 and any other relevant statute;

- Awarding costs and disbursements to Plaintiff; and

- Awarding such other, further, and different relief as this Court may deem just and proper.

Dated: January 26, 2024
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff*

By:    *Amy L. Bellantoni*
Amy L. Bellantoni, Esq.
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

---

[28] Penal Law 400.00(4-b).